J-S04002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SCOTT ALLEN CHAMBERLAIN, | |
| Appellant | No. 1124 WDA 2014 |

Appeal from the PCRA Order June 17, 2014
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0000039-2011

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SCOTT ALLEN CHAMBERLAIN, | |
| Appellant | No. 1125 WDA 2014 |

Appeal from the PCRA Order June 16, 2014
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0001556-2010

BEFORE:  BOWES, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 07, 2016**

Scott Allen Chamberlain appeals from PCRA orders denying him relief at two criminal actions.  We affirm.

This appeal involves two sets of criminal charges, which were originally consolidated but which were severed at Appellant's request.  At criminal case

* Retired Senior Judge assigned to the Superior Court.

number 1556 of 2010, Appellant was charged with six counts of persons not to possess a firearm, 18 Pa.C.S. § 6105(a)(2), based upon the following. On July 21, 2009, State Trooper Charles Chaney was called to investigate an incident of domestic violence and went to a women's shelter in Altoona to interview the victim, Melinda DeSalvo, who was the live-in girlfriend of Appellant and the mother of his daughter. Ms. DeSalvo told Trooper Chaney that she had gone to the women's shelter "over a domestic situation" with Appellant. N.T. Omnibus Pre-Trial Motion, 2/22/11, at 6. She reported that she was concerned because Appellant was making methamphetamine and had "several firearms and had made threats that he would kill her and police." *Id*. Ms. DeSalvo said that Appellant possessed several rifles, including assault rifles, and always carried a weapon. Ms. DeSalvo also told Trooper Chaney that, during the preceding year, Appellant and his son, Allen, made methamphetamine "at the little shed across the way on [his] property." *Id*. She reported that she knew Appellant and Allen were making methamphetamine because she had purchased the ingredients to make the drug and used it herself.

Trooper Chaney did a criminal background check on Appellant and discovered that he had pled guilty to felony burglary on February 24, 2003, which rendered Appellant subject to the prohibition against possession of a firearm. Trooper Chaney thereafter secured a search warrant for Appellant's home located on Hunter's Lane, Rural Route 3, Box 85-A, Hollidaysburg. On

July 23, 2009, while executing the warrant, police discovered ingredients for making methamphetamine, firearms, and ammunition.

After litigating an unsuccessful motion to suppress the weapons as the fruit of an unlawful search, Appellant proceeded to a jury trial on September 15, 2011. The jury convicted him of possession of a Remington .16 gauge shotgun, a Winchester .22 caliber rifle, an Aldo Uberti replica Colt Walker .44 cap and ball revolver, a black powder rifle, a Norinco 7.62 caliber semiautomatic rifle, and a Romarm Cugir 7.62 caliber semiautomatic rifle. On September 29, 2011, he was sentenced to an aggregate term of ten to twenty years imprisonment.

At criminal action number 39-2011, Appellant was charged with manufacturing a controlled substance, manufacturing methamphetamine with a child present, operating a methamphetamine laboratory, possession of a controlled substance, and persons not to possess a firearm. These charges arose from the following events. On December 17, 2010, two state troopers and two Hollidaysburg police officers responded to a domestic violence call from Ms. DeSalvo, who had resumed living with Appellant on Hunter's Lane. The couple's daughter was eleven years old at that time and resided with her parents.

After police responded to the call, they began to search for Appellant outside the home. They detected a strong chemical odor coming from a room attached to the residence under the porch. Police also saw that the

room had fans and electrical wiring emanating from it, and they asked Ms. DeSalvo if Appellant was cooking methamphetamine in the room. Ms. DeSalvo admitted that Appellant had manufactured that drug in the past and indicated that he might be conducting the same activity in the room as she had detected the odor of methamphetamine in the house. Ms. DeSalvo also reported that Appellant and his son built the room about a year beforehand and that they and another individual conducted suspicious activities therein.

On December 17, 2010, police secured another warrant for Appellant's Hunter Lane residence. During that search, they found a functional methamphetamine laboratory on the ground floor, including a gas generator, acids, solvent, salts, and the equipment needed to cause the chemical reactions that result in the production of methamphetamine. They also discovered approximately two grams of finished methamphetamine and a .22 caliber revolver.

After Appellant litigated an unsuccessful motion to suppress all the incriminating items discovered pursuant to the December 17, 2010 search, the weapons offense was severed from the drug charges. Appellant proceeded to a jury trial on the gun charge. Appellant's defense was that the gun found on December 17, 2010, was inoperable.

Appellant adduced evidence that, at the request of police, a gunsmith had examined the firearm. The gunsmith's report indicated that the "bore is pitted and beyond repair, the main spring is missing, the timing is extremely

poor, the hammer does not match, [and] the lockup is extremely poor[.]" N.T. Trial, 7/19/11, at 157. His conclusion was that the gun was not functional and could not be repaired. Based on this report, Appellant maintained to the jury that the gun was a "piece of scrap, it doesn't function, can't shoot." *Id*. at 46. He continued, "Now whenever I read firearm and what the definition is I don't see in there also to include a piece of scrap. So what you have to ask yourself is what's the intent of this statute." *Id*.

On July 20, 2011, after a two-day trial, the jury rejected this defense and found Appellant guilty of the charge of persons not to possess a firearm. Appellant was sentenced on this offense on September 29, 2011, to five to ten years imprisonment.[1] Our review of the sentencing transcript and written sentencing order reveals that no mandatory minimum sentence was invoked by the Commonwealth or imposed by the sentencing court. The court had the benefit of a presentence report. The Commonwealth introduced evidence of Appellant's recorded jail conversations. Specifically, State Trooper Edward A. Ostrowski testified as follows. He had reviewed a number of prison tapes of calls that Appellant made to his mother and Ms. DeSalvo. Therein, Appellant said that he had other firearms and that "he

_____

[1] While Appellant was sentenced at case number 39-2011 on the same day that he was sentenced at action number 1556-2010, the sentencing proceedings were conducted separately.

will always have firearms. Do not sell his firearms." N.T. Sentencing (39-2011), 9/29/11, at 3. During one conversation, Ms. DeSalvo said that she had "gotten a cat and that particular conversation basically went, 'I don't like cats; I will shoot animals: I will shoot cats; I will shoot police officers, for that matter.'" *Id*. Based upon these statements, the Commonwealth represented that Appellant was a threat to society and not a good candidate for rehabilitation.

Appellant countered that he was convicted of an offense that involved possession "of a non-functioning firearm." *Id*. at 4. Appellant, who exercised his right to allocution, claimed that he did not know that he was not allowed to possess the useless gun in question and that the weapons he told his family not to relinquish were family heirlooms. Ms. DeSalvo testified on Appellant's behalf, claiming that he was a nonviolent person, and she pled for clemency due to the fact that they had a minor child.

The September 29, 2011 sentence of five to ten years in jail on the weapons charge was premised upon Appellant's extensive criminal background, his indication in his recorded jail conversations that he did not intend to relinquish possession of any firearms to which he still had access, and the fact that the jury's verdict reflected a rejection of his claim that he did not know that he was not permitted to possess the gun found on December 17, 2010.

As to the pending drug charges filed at case number 39-2011, on October 13, 2011, Appellant entered a negotiated guilty plea to manufacturing a controlled substance, manufacturing methamphetamine with a child present, and operating a methamphetamine laboratory. The Commonwealth dismissed the charge of possession of a controlled substance, and it agreed to the imposition of a five to ten year term of incarceration. The written guilty plea colloquy establishes that Appellant faced a potential twenty-seven year maximum term, as follows: 1) ten years on the manufacturing methamphetamine; 2) ten years for operating a methamphetamine laboratory with a child present; and 3) seven years for operating a methamphetamine laboratory. The negotiated guilty plea was to "5-10 years consecutive to the other 2 cases." Written Guilty Plea colloquy Form, 10/13/11, at ¶ 34.

That same day, the court entered a sentencing order. Therein, the court indicated that it conducted an oral colloquy and was satisfied that the guilty plea was knowing and voluntary. Given that the guilty plea was for a negotiated sentence, Appellant waived preparation of a pre-sentence report. Appellant was sentenced, in accordance with the plea, to five to ten years imprisonment on the charge of manufacturing methamphetamine and two concurrent sentences on the remaining charges. The sentence was made consecutive to the one imposed at case number 1556-2010 and the

sentence previously imposed at action number 39-2011 on the weapons conviction.

Appellant did not file a direct appeal at either action. On September 28, 2012, Appellant filed a *pro se* request for PCRA relief at 39-2011 from the judgment of sentence imposed on October 13, 2011. On July 22, 2013, Appellant filed a *pro se* PCRA petition at 1556 of 2010 requesting relief from the judgment of sentence imposed therein on September 29, 2011. Paul M. Puskar, Esquire, was appointed as counsel for Appellant. The PCRA court held hearings in connection with both cases on January 17, 2014, and June 12, 2014.

After conducting the hearings, the PCRA court concluded that Appellant was not entitled to post-conviction relief in case number 39-2011 and that the PCRA petition filed at action number 1556 of 2010 was untimely. PCRA counsel filed the present appeals, which were consolidated, from the denial of PCRA relief. Thereafter, Appellant filed a petition asking to proceed *pro se*, and this Court remanded for a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). The court held the requisite colloquy, concluded that Appellant had knowingly and voluntarily decided to proceed *pro se*, and allowed Mr. Puskar to withdraw. Appellant raises these contentions on appeal:

> I. Whether the PCRA court erred as a matter of law and/or abused its discretion in denying appellant PCRA relief at docket no.: [39-2011] where the erroneous advice of Appellant's trial

counsel ultimately led to Appellant's rejection of a "global" guilty plea offer of 6 to 12 years' imprisonment?

II. Whether Appellant is entitled to vacation of the 5-10 year sentence as imposed at docket no.: [39-2011] where said sentence was imposed pursuant to the mandatory sentencing provisions of 18 Pa.C.S. §7508(a)(4)(iii) and 42 Pa.C.S. §9712.1?

III. Whether the PCRA court erred as a matter of law and/or abused its discretion in dismissing Appellant's PCRA at docket no. [1556-2010] as untimely filed and failing to fall within any one of the exceptions set forth in 42 Pa.C.S. §9545(b)(1)?

Appellant's brief at 4.

Appellant's first averment is that his trial counsel was ineffective for advising him to reject a global guilty plea offer involving all charges at both case numbers wherein Appellant could have tendered a plea in exchange for a six to twelve year jail term; Appellant seeks to enforce the plea offer.[2] Initially, we note that our "standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." *Commonwealth v. Smith*, 121 A.3d 1049, 1052 (Pa.Super. 2015). Appellant avers that trial counsel was ineffective. "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the

---

[2] Since, as analyzed in the text, *infra*, Appellant's petition filed at case number 1556 of 2010 is untimely, our discussion of this question is limited to action number 39-2011, where Appellant was sentenced to a total of ten to twenty years in jail.

underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa.Super. 2013) (*en banc*). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. *Id*. A determination as to whether the facts asserted present a claim of arguable merit is a legal one. *Id*.

We conclude that Appellant's claim is not of arguable merit since trial counsel testified at the PCRA hearing that he emphatically and repeatedly advised Appellant to accept the plea offer in question and that the only reason that the offer was not accepted was due to Appellant's refusal to follow counsel's advice. David Beyer, Esquire, represented Appellant at both 39-2011 and 1556 of 2010, when the two proceedings were first instituted and were consolidated.[3] He litigated Appellant's suppression motion and then successfully obtained severance of the two cases from each other as well as severance of the weapons offense charged at case number 39-2011.

Mr. Beyer testified as follows. He had many discussions regarding Appellant's entry of a guilty plea. The district attorney first offered a deal to "encompass all the cases for a plea of seven to fourteen years," and the

---

[3] Mr. Beyer was replaced by another lawyer after Appellant's conviction of the gun offense at number 39-2011.

offer was made at the preliminary hearing. N.T. PCRA Hearing, 1/17/14, at 21. That plea was reduced to writing and introduced as an exhibit. Mr. Beyer thereafter negotiated a better deal for Appellant, and the Commonwealth agreed to reduce the negotiated sentence to six to twelve years. At the time, the district attorney said that it was his "best offer; six to twelve on all the cases." *Id*. at 22.

Mr. Beyers reported that he discussed the plea offer with Appellant. He stated, "**[M]any, many times** to, you know, I said, [Appellant], **you gotta take this deal**, I said if you get convicted on one and then another, it could be consecutive, I said, you could be looking at a significant time; **you gotta take this deal***.*" *Id*. at 23 (emphases added). Mr. Beyer also explained that he could not win all three of the cases and advised Appellant that he was facing a lot more than six to twelve years imprisonment.

In response to Mr. Beyer's entreaties, Appellant continually responded, "f___ 'em; he said, let's make them spend their money and take me to trial[.]" *Id*. at 24. Mr. Beyer told Appellant, "[T]hat's no way to think of this; it's not about them spending money; it's about your life and whether -- -- how --- what period of time you're going to be incarcerated. [Appellant] just didn't want to hear it." *Id*. Mr. Beyer even solicited assistance on several occasions from Ms. DeSalvo and Appellant's mother, asking them to help convince Appellant to accept the global plea offer of six to twelve years.

They reported back to Mr. Beyer that Appellant refused to budge on the matter.

As to the gun charge leveled at action number 39-2011, Mr. Beyer testified specifically that it "went to trial against my advice on the insistence of my client[.]" *Id*. at 25. Forced to try the case, Mr. Beyer went with the best defense possible, which was that the gun was a piece of scrap metal. While aware that possession of an inoperable gun can still result in a conviction for persons not to possess, Mr. Beyer hoped that the jury would feel that the offense was not committed, explaining that sometimes "a jury will do what they feel is right." *Id*. at 33.

On appeal, Appellant relies solely on his own testimony. He asserts that Mr. Beyer never explained to him that a conviction for persons not to possess can be obtained despite the fact that a firearm is inoperable and that he would have accepted the global plea offer if he had known about the legal flaw in the proffered defense to the gun charge leveled at case number 39-2011. However, the PCRA court specifically found Mr. Beyer to be credible. Trial Court Opinion, 6/17/14, at 4. "The PCRA court's credibility determinations, when supported by the record, are binding" for purposes of appellate review. *Commonwealth v. Watkins*, 108 A.3d 692, 701 (Pa. 2014).

The PCRA court's credibility determination herein is amply supported by the record. Mr. Beyer testified that he repeatedly and forcefully insisted

that Appellant accept the plea offer, even enlisting the help of relatives. Mr. Beyer reported that he discussed the chances of obtaining an acquittal in the cases. Mr. Beyer specifically addressed the viability of the defense to the gun charge at case number 39-2011, stating that trial occurred on that offense against his advice. Thus, the record supports the PCRA court's determination that the plea offer was rejected by Appellant in the face of contrary advice by counsel and with knowledge of all possible consequences, including conviction of the weapons charge revealed at case number 39-2011. Hence, we reject Appellant's first allegation of error.

Appellant next suggests that the judgment of sentence entered at case number 39-2011 was imposed in violation of the Supreme Court's decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013). This averment was raised for the first time on appeal, but, as it relates to the legality of the sentence imposed, we conclude that it is not waived. *Commonwealth v. Ruiz*, 2015 WL 96320892015, *5 (Pa.Super. Dec. 30, 2015) ("an *Alleyne* claim is a non-waivable challenge to the legality of sentence"). In *Alleyne*, the United States Supreme Court held that any fact, other than a prior conviction, necessary to trigger application of a mandatory minimum sentence must be submitted to a jury and proven beyond a reasonable doubt.

In the present case, Appellant mistakenly[4] asserts that he was sentenced at action number 39-2011 under two mandatory minimum sentencing provisions: 1) 42 Pa.C.S. §9712.1, which applies a mandatory minimum sentence when guns are found in close proximity to drugs and which was struck down due to *Alleyne* in *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super. 2014); and 2) 18 Pa.C.S. § 7508, which sets forth various mandatory minimum sentences according to the weight of the drugs involved in a case and which was ruled unconstitutional under *Alleyne* in *Commonwealth v. Mosley*, 114 A.3d 1072 (Pa.Super. 2015).

Our review of the record establishes conclusively that Appellant was not sentenced at action number 39-2011 under either of the aforementioned mandatory minimum sentencing statutes. While Appellant may have been subject to one or both of them, they were not applied. At action number 39-2011, Appellant first proceeded to trial on the charge of possession of a firearm by a prohibited person, which does not involve a mandatory minimum sentence. Appellant thereafter proceeded to enter a **negotiated** guilty plea on three drug charges in exchange for five to ten years imprisonment and dismissal of the remaining drug offense. The three

---

[4] Since it was not raised in the trial court proceedings, this contention was not addressed by the PCRA court. The Commonwealth is under the impression that *Alleyne* is implicated in this matter; however, it did not have the ability to review the record herein since the issue was raised for the first time after this appeal was filed.

charges to which Appellant pled guilty could have resulted in a twenty-seven year maximum sentence. That same day, the court simply entered a sentencing order in compliance with the negotiated guilty plea.

The record also contains a Department of Correction form 300B, called a Court Commitment, State or Correctional Institution and dated December 9, 2011. It contains information about sentencing and pertains to the three drug offenses. Form 300B was directed to the Department of Corrections, and was executed by the sentencing judge. It set forth the sentences imposed as to the three drug offenses, and that form plainly states that a mandatory sentence was **not** imposed with respect to the three drug charges involved in the negotiated guilty plea. Hence, Appellant mistakenly invokes *Alleyne* on appeal. His sentence was entered pursuant to the negotiated guilty plea agreement rather than under an infirm mandatory minimum sentencing statute.

Appellant's final position involves action number 1556 of 2010. Appellant avers that the PCRA court improperly found his PCRA petition therein to be untimely. He asserts that he asked his counsel to file a direct appeal and that counsel was ineffective for disregarding his request. It is settled law that "all requests for reinstatement of appellate rights . . . must meet the timeliness requirements of the PCRA." *Commonwealth v. Fairiror*, 809 A.2d 396, 397 (Pa.Super. 2002) (citing *Commonwealth v. Lantzy*, 736 A.2d 564 (Pa. 1999) (petition seeking restoration of appellate

rights must be brought in a timely PCRA petition)). If a PCRA petition is untimely, this Court lacks jurisdiction over the petition. *Commonwealth v. Miller*, 102 A.3d 988 (Pa.Super. 2014); *see also Commonwealth v. Chester*, 895 A.2d 520 (Pa. 2006).

Any PCRA petition, "shall be filed within one year of the date the judgment becomes final" unless an exception to the one-year time restriction applies. 42 Pa.C.S. § 9545(b)(1). "A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). At action number 1556 of 2010, Appellant's judgment of sentence was imposed on September 29, 2011, and since Appellant did not appeal, it became final thirty days thereafter, on October 29, 2011. Appellant had until October 29, 2012, to file a timely petition, and Appellant's PCRA petition in that case was not filed until July 22, 2013.

There are three exceptions to the one-year time bar:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the

Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i-iii). "Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Appellant avers that his petition should be considered timely due to ineffective assistance of counsel. It is beyond cavil in this Commonwealth that "[a]llegations of ineffective assistance of counsel will not overcome the jurisdictional timeliness requirements of the PCRA." **Commonwealth v. Fowler**, 930 A.2d 586, 591 (Pa.Super. 2007). Accordingly, the PCRA court correctly concluded that the petition filed at case number 1556-2010 was untimely.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/7/2016

- 17 -